# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| NORTHSIDE CHURCH OF CHRIST, | |
| Plaintiff, | Case No. 3:20-cv-00184 |
| v. | Chief Judge Waverly D. Crenshaw, Jr |
| OHIO SECURITY INSURANCE CO., | Magistrate Judge Jeffery S. Frensley |
| Defendant. | |

## DEFENDANT OHIO SECURITY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OVER CLAIMS ALLEGED ON BEHALF OF NONRESIDENT PUTATIVE CLASS MEMBERS

## I.      INTRODUCTION

This Court lacks personal jurisdiction over Defendant Ohio Security Insurance Company ("Ohio Security") with respect to the claims Plaintiff asserts on behalf of a class that includes non-Tennessee residents.  (Amended Compl. ¶ 80, Doc. 13, PageID # 90).  Pursuant to Federal Rule of Civil Procedure 12(b)(2), Ohio Security moves to dismiss Plaintiff's claims asserted on behalf of alleged class members who are not Tennessee residents.  Exercising specific jurisdiction over Ohio Security for claims regarding alleged acts or omissions outside of Tennessee, for injuries allegedly sustained by nonresidents with no connection to Tennessee, is incompatible with the United States Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).  This motion should be granted, Plaintiff's claims on behalf of nonresident putative class members dismissed, and this case should proceed as to Plaintiff's Tennessee claims only on behalf of alleged Tennessee class members.

## II.     FACTS

The facts relevant to this motion are few and uncontested.  Plaintiff alleges it is a citizen of Tennessee.  (Am. Compl. ¶ 1, Doc. 13, PageID # 74).  Plaintiff is the only named plaintiff, there is no Mississippi or Ohio plaintiff.  Ohio Security is alleged to be organized under the laws of New Hampshire, with its principal place of business in Massachusetts.  (*Id*. ¶ 2, Doc. 13, PageID # 74).  Plaintiff alleges it is an insured of Ohio Security "pursuant to an insurance contract whereby Ohio Security … insure[d] Plaintiff."  (*Id*. ¶ 10, Doc. 13, PageID # 76).  Plaintiff generally alleges Ohio Security improperly calculated an insurance payment owed to Plaintiff for a loss in Tennessee under a Tennessee insurance policy, and thus breached the insurance contract.  (*Id*. ¶¶ 10-19, Doc. 13, PageID # 76-77).  Plaintiff asserts claims on behalf of a class of persons comprised of Ohio Security policyholders in Tennessee, Mississippi, and Ohio.  (*Id*. ¶ 80, Doc. 13, PageID # 90).

Plaintiff alleges that this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") and personal jurisdiction over Ohio Security "because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Tennessee."  (*Id*. ¶¶ 8-9, Doc. 13, PageID # 76).

## III.     LAW AND ARGUMENT

### A.     Rule 12(b)(2) And Personal Jurisdiction.

Rule 12(b)(2) provides for the dismissal of claims based on lack of personal jurisdiction.  "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (finding a Nevada federal court lacked personal jurisdiction over defendant for allegedly tortious acts in Georgia).  In an action where the court has diversity subject-matter jurisdiction, "the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations."  *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (parallel citation omitted).  "A

2

court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." *Id.* (parallel citation omitted).

"The Tennessee long-arm statute . . . has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause. Thus, the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical." *Payne v. Motorists' Mut. Ins. Companies*, 4 F.3d 452, 455 (6th Cir. 1993) (internal citations omitted). Therefore, a court only needs to "determine whether the assertion of personal jurisdiction violates constitutional due process." *Intera Corp.*, 428 F.3d at 616.[1] There are "two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific (sometimes called 'case-linked) jurisdiction." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (citation omitted). This case concerns specific jurisdiction.

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court may "(1) rule on the motion on the . . . materials submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion." *Bobick v. Wyndham Worldwide Operating, Inc*., No. 3:18-cv-00514, 2018 U.S. Dist. LEXIS 163192, at *8-9 (M.D. Tenn. Sep. 24, 2018). This motion concerns a matter of law arising from uncontested jurisdictional facts, and therefore should be amenable to resolution based on the allegations of the Amended Complaint and any materials submitted by the parties.

### B. The Court Lacks General Personal Jurisdiction Over Ohio Security.

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 137

---

[1] Tennessee's long-arm statute pertains to claims "arising from" actions in "*this state*." TENN. CODE § 20-2-214(a)(1)-(5) (emphasis added).

S. Ct. at 1780 (emphasis in the original). The Court, however, lacks general jurisdiction over Ohio Security.

General jurisdiction exists "when a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler,* 571 U.S. at 137 (citation omitted).[2] The Supreme Court has not "foreclose[d] the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19. The Court, however, stated that a corporation is not subject to general jurisdiction "in every State in which [it] 'engages in a substantial, continuous, and systematic course of business.'" *Id.* ("That formulation, we hold, is unacceptably grasping."). Instead, the inquiry is "whether [a] corporation's 'affiliations with the state are so "continuous and systematic" as to render [it] essentially at home in the forum state.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

---

[2] After *Daimler* "the majority of district courts" have rejected the idea that registration to do business in a state constitutes a consent to general jurisdiction. *Spratley v. FCA US LLC*, No. 3:17-cv-0062, 2017 U.S. Dist. LEXIS 147492, at *12-13 (N.D.N.Y. Sep. 12, 2017). "The Supreme Court rejected the idea that corporations are subject to general jurisdiction in every state where they conduct substantial business as "unacceptably grasping." *Id*. (citing *Daimler*, 134 S. Ct. at 761); *see also Satterfield v. Gov't Employees Ins. Co.*, 287 F.Supp.3d 1285, 1297-98 (W.D. Okla. 2018) (rejecting argument that being licensed to sell insurance in Oklahoma is sufficient to establish general jurisdiction because a business would be subject to general jurisdiction in every State in which it operates) (citing *Daimler*, 134 S. Ct. at 762 n.20).

4

Ohio Security is incorporated in New Hampshire and its principal place of business is Massachusetts. (Am. Compl. ¶ 2, Doc. 13, PageID # 74); (Business Entity Discl., Doc. 26, PageID # 153). It does business in Tennessee, but no allegations indicate it is "essentially at home" here. *Daimler,* 571 U.S. at 139. In fact, the Amended Complaint does not allege general jurisdiction. Instead, it alleges the Court has specific jurisdiction because "[Ohio Security] has availed itself of the privilege of conducting business" in Tennessee. (Am. Compl. ¶ 9, Doc. 13, PageID # 76). Whether a defendant has "avail[ed] himself of the privilege of acting" in the forum state is an element of specific, not general, jurisdiction. *See Bobick*, 2018 U.S. Dist. LEXIS 163192, at *19 (outlining the three specific jurisdiction elements), citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The Court lacks general jurisdiction over Ohio Security.

### C.  Limits On Specific Jurisdiction Under *Bristol-Myers Squibb Co. v. Superior Court*.

The Supreme Court's personal jurisdiction decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017), like its general jurisdiction decision in *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), represents a paradigm shift, a narrowing in how the Court views personal jurisdiction. *Bristol-Myers* is notable not only in its language and holding, but in how it came before the Court, and thus warrants careful examination.

The Court in *Bristol-Myers* held that a California state court lacked personal jurisdiction over the defendant to adjudicate mass tort claims of non (California) residents. 137 S. Ct. at 1777. The plaintiffs, most of whom were not California residents, filed lawsuits in California state courts against Bristol-Myers asserting state-law claims based on injuries they suffered from a pharmaceutical product. *Id*. Bristol-Myers was incorporated in Delaware, headquartered in New York, and had "substantial" operations in New Jersey. *Id*. at 1775. It sold Plavix in California, but had no other substantial contacts with California.

5

Bristol-Myers moved to quash service of summons of the nonresidents' claims for lack of personal jurisdiction. *Id.* at 1778. The California court initially held Bristol-Myers was subject to general jurisdiction. *Id.* Yet, after the U.S. Supreme Court decided *Daimler AG v. Bauman*, 571 U.S. 117 (2014), which narrowed general jurisdiction concepts, the California court determined that general jurisdiction was "clearly" lacking, but that "specific jurisdiction" over the nonresidents' claims was proper. *Id.* Bristol-Myers appealed to the California Supreme Court, which affirmed the specific jurisdiction finding based on a "sliding scale approach" to specific jurisdiction. *Id.* This approach allowed specific jurisdiction due to the defendant's "wide ranging" contacts with the forum, which permitted specific jurisdiction "based on a less direct connection between [a defendant's] forum activities and plaintiffs' claims than might otherwise be required." *Id.* at 1778-79. In the words of the *Bristol-Myers* Court, this "attenuated requirement" was met because "nonresidents['] [claims] were similar in several ways to the claims of the California residents," specifically, they were "based on the same allegedly defective product and the assertedly misleading marketing and promotion of the product." *Id.* at 1779.

Bristol-Myers appealed to the U.S. Supreme Court, arguing that the California courts lacked jurisdiction over it with respect to the nonresident plaintiffs' claims, those who had not purchased, used, or been injured by the product in California. In rejecting California's exercise of specific jurisdiction, the U.S. Supreme Court distinguished the two bases for a court to exercise jurisdiction over a party – general jurisdiction and specific jurisdiction. *Bristol-Myers*' focus is specific jurisdiction, but it did discuss general jurisdiction and its most recent general jurisdiction decision (*Daimler*, 571 U.S. at 137), primarily to contrast general and specific jurisdiction and to address California's specific jurisdiction analysis, which the high Court labeled a "loose and spurious form of general jurisdiction." 137 S. Ct. at 1781.

6

For a "state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendants contacts with the *forum*." *Id*. (emphasis in the original) (internal quotations omitted). What is required is "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*.

The interest of the forum State and plaintiff in proceeding in the plaintiff's chosen forum does impact whether personal jurisdiction exists. *Id*. But the "primary concern" is the burden on the defendant, both with respect to "practical problems of litigating in the forum" and the "more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims." *Id*. The "territorial limitations on the power of the respective States" implies the sovereignty of each State is "a limitation on the sovereignty" of other States and, "at times, this federalism interest may be decisive." *Id*. The Court added:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the *Due Process Clause*, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Id*. at 1780-81 (emphasis added).

The U.S. Supreme Court outlined the "danger" of finding specific jurisdiction based on factors other than an "adequate link between the State and the nonresidents claims." *Id*. Moreover, California could not bootstrap the nonresidents' claims based on the in-state plaintiff's claims because a third party's claims "standing alone is an insufficient basis for jurisdiction . . . even when the third parties can bring claims similar to those brought by the nonresidents." *Id*.

The missing requirement noted in *Bristol-Myers* was a connection between the forum and the nonresidents' claims. *Id.* The first case cited by the U.S. Supreme Court for this requirement was *Walden v. Fiore*, 134 S. Ct. 1115 (2014), which involved a Nevada resident who sued an out-of-state resident in *federal court* for conduct that occurred in Georgia. *Id.* at 1117. Even though the plaintiffs suffered "foreseeable harm in Nevada" the "*relevant* conduct occurred in Georgia" and the fact that the conduct affected the Nevada plaintiffs was insufficient. *Bristol-Myers*, 137 S. Ct. at 1781-82 (quoting *Walden*, 134 S. Ct. at 1126) (emphasis added by *Bristol-Myers*). *Bristol-Myers* stated the claims of the nonresident plaintiffs were "even weaker" than in *Walden*, stating they are "not California residents and do not claim to have suffered harm in that state" and the conduct underlying the "nonresidents' claims occurred elsewhere." *Id.* at 1782. The California courts, therefore, lacked specific jurisdiction. *Id.*

The Supreme Court also distinguished two cases cited in favor of specific jurisdiction. In *Keeton v. Hustler Magazine, Inc.*, 104 S. Ct. 1473 (1984), the Court found specific jurisdiction for a New York resident to sue for libel the out of state defendant in New Hampshire. The *Bristol-Myers* court distinguished *Keeton* in two respects. First, "[f]alse statements of fact harm both the subject of the falsehood and the readers of the statement." *Id.* at 1782. There was a connection between the circulation of the magazine in New Hampshire and the damage allegedly caused in the State. *Id.* The nonresident *Bristol-Myers* plaintiffs, however, involved "no harm in California and no harm to California residents." *Id.* Second, while jurisdiction in New Hampshire was proper "to entertain the plaintiff's request for their damages outside the State," that holding involved "the scope of a *claim* involving in-state injury and injury to residents of the State. *Id.* (citing *Keeton*, 104 S. Ct. at 1479). The nonresident *Bristol-Myers* plaintiffs, however, involved no in-state injury and no injury to California residents. *Id.*

The second case, *Phillips Petroleum v. Shutts*, 105 S. Ct. 2965 (1985), was even "less relevant" because "*Shutts* concerned the due process rights of *plaintiffs*," specifically whether the federal court could exercise jurisdiction over nonresident class members and bind them to any judgment. *Id.* at 1872-83. (emphasis in original). The *Shutts* defendant argued the out-of-state class members should not be in the case unless they affirmatively opted into the class, instead of merely failing to opt out after receiving notice. *Id.* But a State's authority "to entertain the claims of nonresident class members is entirely different from its authority to exercise jurisdiction over an out of state defendant." *Id.* at 1783. The *Bristol-Myers* plaintiffs argued that it would be "absurd for the [*Shutts*] Court to reach the opposite result if the [defendant] had only invoked its own due-process rights" rather than the nonresident plaintiffs' rights. *Id.* But the *Shutts* defendant did not raise, and thus the Court did not address, that issue.

In concluding its *Bristol-Myers* decision, the Court rejected the "parade of horribles" recited by the plaintiffs about making it harder for plaintiffs to aggregate claims and hold parties responsible. *Id.* The Court noted all plaintiffs could file a consolidated action in the States that have general jurisdiction over the defendant or the residents that were allegedly harmed by the product could sue in their home States.

D. *Bristol-Myers* **Precludes this Court From Exercising Specific Jurisdiction Over Ohio Security for Claims Asserted on Behalf of Alleged Mississippi and Ohio Class Members for Alleged Injuries Incurred in Mississippi and Ohio**.

Ohio Security does not dispute this Court's exercise of specific jurisdiction with respect to claims based on Tennessee property damage that arise from policies that Ohio Security issued in Tennessee. Those claims arise in "this state." *See* Tenn. Code § 20-2-214(a). But this Court cannot use Tennessee's long-arm statute to address in this forum alleged wrongs to Mississippi and Ohio policyholders that arose in Mississippi and Ohio. Under *Bristol-Myers Squibb Co.*, this

Court lacks personal jurisdiction over Ohio Security for Plaintiff's claims asserted on behalf of Mississippi and Ohio putative absent class members. 137 S. Ct. at 1780.

In ruling that specific jurisdiction was improper, the *Bristol-Myers* Court outlined several categorical and broad concepts. Most importantly, the Court noted that for a "state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." 137 S. Ct. at 1777.[3] (emphasis in the original) (internal quotations omitted). The Court also noted that the "primary concern" is the defendant, both with respect to "practical problems of litigating in the forum" and the "more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims." *Id.*

Both the language and logic of *Bristol-Myers*, however, preclude this Court from exercising specific jurisdiction over Ohio Security with respect to claims that have no connection to Tennessee. First, the Court's articulation of specific jurisdiction in *Bristol-Myers* applies with equal force to individual actions or class actions, specifically, that "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id.* at 1780 (emphasis in the original) (internal quotations omitted). What is required is "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* Moreover, a third parties' claims "standing alone is an insufficient basis for jurisdiction . . . even when the third parties can bring claims similar to those brought by the nonresidents." *Id.* Indeed, personal jurisdiction analysis protects a defendant, not a plaintiff, and focuses on the connection between the forum and claims. *Bristol-Myers*, 137 S. Ct. at 1781.

---

[3] *Bristol-Myers* was an 8-1 decision, with Justice Sotomayor dissenting. Justice Sotomayor predicted *Bristol-Myers* would result in a "similar contraction" in specific jurisdiction like the "substantial curbs . . . in general jurisdiction" due to *Daimler*, 134 S. Ct. at 1784.

There is no connection between a Tennessee insured's claims and the claims of Mississippi and Ohio insureds for damages incurred in Mississippi and Ohio, under Mississippi and Ohio policies, and Mississippi and Ohio law. There is no "affiliation" between Tennessee and the Mississippi and Ohio policyholders; specifically, no Tennessee "activity or an occurrence" that is "subject to" Tennessee's "regulation" with respect to alleged acts and harms visited upon Mississippi and Ohio policyholders. *Id*. at 1780.

Even the traditional specific jurisdiction analysis does not favor jurisdiction over the Mississippi and Ohio claims asserted by a Tennessee Plaintiff in a Tennessee federal court. The Sixth Circuit requires that three elements be met for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Intera Corp.*, 428 at 615 (quoting *S. Mach. Co.*, 401 F.2d at 381). "[E]ach criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *SEE, INC. v. Imago Eyewear Pty, Ltd.*, 167 F.App'x 518, 523 (6th Cir. 2006) (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989)). While Ohio Security availed itself of the privilege of acting in the forum state, the Mississippi and Ohio causes of action of nonresident class members do not arise from Ohio Security's actions in Tennessee. Thus, the second element is lacking, and personal jurisdiction should not be "invoked."

While the absence of the second element is dispositive, with respect to the third element, "reasonableness," the Sixth Circuit mandates consideration of: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at

618. At least two of these considerations clearly cut against reasonableness. Tennessee has no interest in adjudicating nonresidents' claims, and other States (*i.e.*, Mississippi and Ohio) certainly have more of an interest in "resolving this controversy." *Id.* at 619. Moreover, Plaintiff's interest in obtaining relief for itself in Tennessee for Tennessee putative class members has no bearing on its interest in obtaining relief for nonresidents.

Logic also favors *Bristol-Myers*' application to class actions. For example, *Bristol-Myers* would preclude a Tennessee court – State or federal (*see Walden,* 134 S. Ct. 1115) – from exercising specific jurisdiction over a defendant for a lawsuit filed by a Mississippi or Ohio resident regarding alleged injuries sustained in those states. The same result would follow if that same Mississippi or Ohio resident filed claims on behalf of a putative class of Mississippi and Ohio residents in Tennessee. *Roy v. FedEx Ground Package Sys.*, 353 F.Supp.3d 43, 57 (D. Mass. 2018) (stating that district courts have generally extended *Bristol-Myers* to the named plaintiff and dismissed claims where the named plaintiff was injured outside the forum).[4]

Given these two outcomes, it would be incongruous to then allow a *Tennessee* resident to represent Mississippi and Ohio residents regarding alleged acts, omissions, and injuries in Mississippi and Ohio, and assert claims on behalf of Mississippi and Ohio class members that *they could not file individually in a Tennessee court*. Merely because the words "class action" have been incanted does not permit a different result under the Rules Enabling Act. 28 U.S.C. § 2072.

---

[4] For example, in *Napoli-Bosse v. GM LLC*, the court dismissed the claims of the nonresident class members, but stated it did not "reach the question of whether, in light of *Bristol-Myers Squibb*, this Court would have personal jurisdiction over GM with respect to the claims of non-resident, absent class members, in the event that a class were certified. Any such inquiry would be premature at this stage." 2020 U.S. Dist. LEXIS 59899, at *9 n.4 (citing *Lugones v. Pete & Gerry's Organic, LLC*, No. 19 Civ. 209, 2020 U.S. Dist. LEXIS 30012, at *12 (S.D.N.Y. Feb. 21, 2020) and *Chen v. Dunkin Brands Inc.*, No. 17-cv-3808, 2018 U.S. Dist. LEXIS 234591, at *12 n.5. (E.D.N.Y. Sept. 17, 2018)).

Indeed, many district courts have applied *Bristol-Myers* to class actions and dismissed claims asserted on behalf of nonresident absent class members in collective actions and class actions. *E.g., Spratley v. FCA US LLC*, No. 3:17-cv-0062, 2017 U.S. Dist. LEXIS 147492, at *19-*20 (N.D.N.Y. Sep. 12, 2017) (class action); *Maclin v. Reliable Reports of Tex. Inc.*, 314 F.Supp.3d 845 (N.D. Ohio 2018) (FLSA collective action); *In re Dicamba Herbicides Litig.*, 359 F.Supp.3d 711, 724 (E.D. Mo. 2019) (class action); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165, 2017 U.S. Dist. LEXIS 162812, at *12 n.4 (D. Ariz. Oct. 2, 2017) (class action); *Carpenter v. Petsmart, Inc.*, No. 19-cv-1731, 2020 U.S. Dist. LEXIS 35459, at *16 (S.D. Cal. Mar. 2, 2020) (class action); *Napoli-Bosse v. GM LLC*, No. 3:18-cv-1720, 2020 U.S. Dist. LEXIS 59899, at *7-8 (D. Conn. Apr. 6, 2020) (nonresident named plaintiffs in a class action).

The claims of the Mississippi and Ohio absent class members that Plaintiff asserts do not arise out of Ohio Security's actions in Tennessee; a straightforward application of *Bristol-Myers* and personal jurisdiction jurisprudence to the claims of those nonresident absent class members demonstrates that the Court lacks personal jurisdiction over Ohio Security for those claims.

  **E.**  **The Arguments Used To Avoid Applying *Bristol-Myers* To Class Actions Do Not Bear Scrutiny**.

Some courts, including this one in *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharmaceuticals, Inc.*, 353 F.Supp.3d 678, 692 (M.D. Tenn. 2018) (Crenshaw, J.), have held that *Bristol-Myers* does not apply to class actions. Those courts have cited one or more of the rationales below to support their holdings. Respectfully, these rationales are not a convincing basis to avoid *Bristol-Myers*, and Ohio Security urges this Court to reconsider its statement in *Momenta*, where nationwide antitrust claims were at issue, in light of the insurance claims here that are highly regulated by individual states.

1.      ***Bristol-Meyers* Was Animated By Due Process Fairness Concerns,
        Which Are Not Limited By "Federalism."**

Some courts draw a line in the sand regarding *Bristol-Myers*, limiting its application to a State court's exercise over a defendant for nonresident, named plaintiffs' mass-tort claims for harms allegedly incurred outside the State.[5]  *See, e.g.*, *In re Chinese-Manufactured Drywall*, No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at \*55-56 (E.D. La. Nov. 30, 2017) ("[F]ederalism concerns do not apply [because *Bristol-Myers* is] . . . about limiting a state court's jurisdiction when it tried to reach out-of-state defendants on behalf of out-of-state plaintiffs in a mass action suit. That scenario is inapplicable to nationwide class actions in federal court . . . .")  This position has been aided by Justice Sotomayor's lone dissent, which stated that the "majority's animating concern . . . appears to be federalism . . . limitations on the power of the respective states," and claiming the majority appears to "concede this is a case about power, not fairness."  137 S. Ct. at 1788 (Sotomayor, J., dissenting).

Distinguishing *Bristol-Myers* by "federalism" concerns is misplaced for at least two reasons.  First, federalism is not limited to regulating "State" power; it represents a whole "system in which there is sensitivity to the legitimate interests of both State and National Governments." *Ruhrgas Ag v. Marathon Oil Co.*, 119 S. Ct. 1563, 1571 (1999).  Moreover, characterizing *Bristol-Myers* as a case about power, as opposed to fairness, is not sound.  *Bristol-Myers* is about due process concerns, specifically, due process rights of the defendant.  137 S. Ct. at 1780 ("[T]he primary concern . . . is the burden on the defendant."); *accord id*. at 1783 ("Since *Shutts* concerned

---

[5] *Momemta Pharms. Inc.* cited *Keeton v. Hustler Magazine, Inc*. for the proposition that "because there is specific jurisdiction over *Plaintiffs*' Tennessee state law claims, they may advance their other various state law claims." 353 F.Supp.3d 678, 691 (M.D. Tenn. 2018) (emphasis added), citing 465 U.S. 770, 778-79.  But if "Plaintiffs" includes anyone other than Tennessee residents, then it conflicts with *Bristol-Myers.* 137 S. Ct. at 1782 ("*Keeton* held that there was jurisdiction in New Hampshire to consider the full measure of the *plaintiff's* claim) (emphasis added).

the due process rights of *plaintiffs*, it has no bearing on the question present here.") (emphasis added). Due process, in turn, "expresses the requirement of "fundamental fairness." *Lassiter v. Dep't of Soc. Servs.*, 101 S. Ct. 2153, 2158 (1981).

Second, and more importantly, while *Bristol-Myers*' articulation of specific jurisdiction was framed by the case before it (*i.e.*, a State's exercise of jurisdiction), there is no meaningful distinction between a state or federal court exercising jurisdiction when the latter is sitting in diversity, relying on a State's long-arm statute and addressing state law claims. *Payne v. Motorists' Mut. Ins. Companies*, 4 F.3d 452, 455 (6th Cir. 1993) ("[T]he jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.") (internal citations omitted). *Bristol-Myers* addressed whether "the California courts' exercise of jurisdiction in this case violates the Due Process Clause of the Fourteenth Amendment," (137 S. Ct. at 1779) leaving open "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1784. But "where a plaintiff's assertion of personal jurisdiction rests upon a state long-arm statute, the relevant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment." *Napoli-Bosse*, 2020 U.S. Dist. LEXIS 59899, at *7-8 (internal quotations and parallel citation omitted).

Moreover, even if the proper framework is the Fifth Amendment, there is no distinction between the jurisdictional analysis under the Fifth or Fourteenth Amendments in this context. *Molock v. Whole Foods Mkt., Inc.*, 297 F.Supp.3d 114, 125 (D.D.C. 2018), affirmed on alternative grounds, 952 F.3d 293 (D.D.C 2020) (stating "courts that have addressed this issue post-*Bristol-Myers* have rejected [such a] . . . constitutional distinction . . . particularly where, as here, the federal court sits in diversity and assesses state law claims.") (internal citations and parallel citation

omitted); *Maclin*, 314 F.Supp.3d at 850-51 ("[T]he Court cannot envisage that the Fifth Amendment Due Process Clause would have any more or less effect on the outcome respecting FLSA claims than the Fourteenth Amendment Due Process Clause . . . ."). In short, the "constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case." *Roy*, 353 F.Supp.3d at 56, citing *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696, 2017 U.S. Dist. LEXIS 153265, at *37 (E.D.N.Y. Sept. 20, 2017)).

In *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the Nevada *federal court* lacked personal jurisdiction over the defendant because the "relevant conduct occurred in Georgia," even though the plaintiffs suffered "foreseeable harm in Nevada." 137 S. Ct. at 1781-82. *Bristol-Myers* stated the claims of the nonresident plaintiffs were "even weaker" than in *Walden*, stating they are "not California residents and do not claim to have suffered harm in that state" and the conduct underlying the "nonresidents' claims occurred elsewhere." *Id.* at 1782. Here, the Mississippi and Ohio absent class members are not residents of Tennessee, do not claim to have suffered harm in Tennessee, and the alleged conduct occurred outside Tennessee. Specific jurisdiction over the Mississippi and Ohio claims is lacking.

"Federalism" concerns are not a valid basis to limit *Bristol-Myers* because the specific jurisdiction analysis for a state and federal court is identical when the federal court is sitting in diversity and assessing state law claims. In both situations, "territorial limitations on the power of the respective States" implies the sovereignty of each State is "a limitation on the sovereignty" of other States and, "at times, this federalism interest may be decisive." *Id.* at 1781. This federalism interest is identical whether a Tennessee state court is entertaining the claims of Mississippi and

Ohio residents, or a Tennessee federal court is entertaining those claims via Tennessee's long arm statute. "[W]hen the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted." *S. Mach. Co.*, 401 F.2d at 385. Similarly, Mississippi's and Ohio's interests "cannot be doubted" either. Under *Bristol-Myers*, Ohio Security should not be forced to "submit[] to the coercive power of a State," specifically Tennessee, which has "little legitimate interest in the claims" of Mississippi and Ohio residents. *Id*. Thus, not only are federalism concerns an invalid basis to avoid *Bristol-Myers*, they actually cut against specific jurisdiction over the claims Mississippi and Ohio putative class members here.

### 2. *Bristol-Myers* Applies to Claims Asserted on Behalf of Absent Class Members Under Rule 23.

Most courts that hold *Bristol-Myers* inapplicable to class actions use two rationales: (1) Rule 23's requirements protect "due process"; and (2) absent class members are not considered for jurisdictional purposes. Neither is a valid basis to avoid the dictates of *Bristol-Myers*.

### a. *Rule 23 Primarily Protects Due Process Rights of Absent Class Members, Not Defendants.*

Courts, including this one, have held that *Bristol-Myers* does not apply to class actions because the requirements of Rule 23 ensure due process. *E.g., Momenta*, 353 F.Supp.3d at 692. "[U]nlike a mass tort action, 'for a case to qualify for class action treatment, it needs to meet the additional due process standards for class certification under Rule 23—numerosity, commonality, typicality, adequacy of representation, predominance and superiority.'" *Id*. at 692 (quoting *In re Chinese-Manufactured Drywall*, 2017 WL 5971622, at *14. Under this argument, *Bristol-Myers* does not apply to class actions because Rule 23 provides "due process safeguards [that are] not

applicable in the mass tort context." *Id.* (quoting *Molock*, 297 F.Supp.3d at 126). Respectfully, however, three flaws underlay this argument.

First, Rule 23 is primarily about protecting the due process rights of absent class members, not defendants. The class action was invented to allow suits "where the number of those interested in the litigation was too great to permit joinder. The absent parties would be bound by the decree so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest." *Shutts*, 105 S. Ct. at 2973. Accordingly, "the procedural safeguards of Rule 23 are meant primarily to protect the absent class members and create criteria for binding the absent class members to whatever settlement or judgment results from a class action." *Carpenter*, 2020 U.S. Dist. LEXIS 35459, at *16. *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) (discussing protection of due process rights of absent class members underpinning requirements of Rule 23(b)(2) and (3); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-47 (1999) (discussing "inherent tension between representative suits and the day-in-court ideal" and due process minimum requirements provided by Rule 23).

Second, a court must protect a defendant's due process rights in any proceeding, including one under Rule 23, but it does not follow that the criteria for certification of a class under Rule 23 protect a defendant's right to due process with respect to personal jurisdiction. *See Mullins v. Direct Dig., Ltd. Liab. Co.*, 795 F.3d 654, 669-70 (7th Cir. 2015) ("Whether a defendant's due process interest is violated depends on the nature of the class action, the plaintiff's theory of recovery, and the defendant's opportunity to contest liability and the amount of damages it owes."); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("Defendant[s] [have the] . . . due process right to challenge the proof used to demonstrate class membership as it does to

challenge the elements of a plaintiff's claim."); *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015) (Class certification "protects the defendant from inconsistent adjudications.").

Most cases citing Rule 23's "due process" protections in holding *Bristol-Myers* inapplicable to class actions rely on two cases – *In re Chinese-Manufactured Drywall*, 2017 U.S. Dist. LEXIS 197612 and *Molock*, 297 F.Supp.3d at126.[6] Circularly, *Molock* largely relies on *In re Chinese-Manufactured Drywall*. Yet, *In re Chinese-Manufactured Drywall* does not articulate the connection between due process, Rule 23's elements, and personal jurisdiction. The argument that Rule 23 protects the defendant's due process rights appears to be an echo chamber with little substantiation.

*In re Chinese-Manufactured Drywall* involved a court's exercise of specific jurisdiction over Chinese companies in multidistrict litigation under 28 U.S.C. § 1407. 2017 U.S. Dist. LEXIS 197612, at *7-8. As foreign defendants, the Chinese companies were not subject to general jurisdiction in any state. The defendants argued under *Bristol-Myers* that the court must dismiss claims by homeowners in states "other than those in which their property is located because this Court lacks personal jurisdiction over nonresident defendants when claims arise from nonresident plaintiffs." *Id*. at *20.

The *In re Chinese-Manufactured Drywall* court's jurisdictional analysis begins by stating that Congress has the constitutional authority to shape federal court jurisdiction and permit nationwide class actions. *Id.* at *45. The court stated "jurisdiction over absent nonresident class

---

[6] *Molock* was affirmed at 952 F.3d 293 (D.D.C 2020), but on alternative grounds, specifically, that absent class members become parties only after certification, thus the defendants' motion to dismiss the absent class members under Rule 12(b)(2) was deemed premature. *Id.* at 298. Similarly, the Fifth Circuit recently held that a defendant did not waive a personal jurisdiction defense as to absent class members, who were not considered parties, because that defense was not "available" until the class is certified. *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020).

Case 3:20-cv-00184   Document 32   Filed 05/11/20   Page 19 of 26 PageID #: 185

members' claims has often been found to be a valid exercise of a federal court's jurisdiction." *Id.* at *46. But this statement pertains to jurisdiction over absent class members, not defendants, and both cases cited by the court for this proposition predate *Bristol-Myers*.[7]

The court then identified four ways in which Congress has shaped federal court jurisdiction to allow nationwide class actions – Rule 4, the Multidistrict Litigation Act, the Class Action Fairness Act ("CAFA"), and Rule 23. While none of these explains why *Bristol-Myers* is inapplicable, the most-cited portion of the decision is: "[F]or a case to qualify for class action treatment, it needs to meet the additional due process standards for class certification under Rule 23 — numerosity, commonality, typicality, adequacy of representation, predominance and superiority." *In re Chinese-Manufactured Drywall,* 2017 U.S. Dist. LEXIS 197612, at *37. This statement is cited in both *Molock*, 297 F.Supp.3d at 126 and *Momenta Pharm. Inc*., 353 F.Supp.3d at 692, but the *In re Chinese-Manufactured Drywall* court provided no analysis to support it or explain how Rule 23 elements protect *defendants'* due process rights.

Most importantly, this statement does not address the predicate question of how Rule 23's elements sanction specific jurisdiction in the first place. And it certainly lacks any explanation for how any finding under Rule 23(a) or Rule 23(b)(3) would justify a court's exercise of authority over a defendant to defend those claims for months, even years, before addressing the class certification question. If predicate personal jurisdiction is a substantive right guaranteed by the Fifth and Fourteenth Amendments, it's unclear how Rule 23 could undermine that right. *See Sacred Heart Health Sys. v. Humana Military Healthcare Servs*., 601 F.3d 1159, 1176 (11th Cir. 2010) ("The Rules Enabling Act, 28 U.S.C. § 2072 – and due process – prevents the use of class

---

[7] *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 364 (D. Ariz. 2009) and *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 985, 1029 (S.D. Ohio 2001).

actions from abridging the substantive rights of any party."); *Dukes*, 131 S. Ct. at 2561 ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right . . . .'")

Moreover, *In re Chinese-Manufactured Drywall* stated it would be a "clear violation of congressional efforts at efficiency in the federal courts" to require "fifty or more separate district courts across the United States" to adjudicate the same claims separately under *Bristol-Myers*. 2017 U.S. Dist. LEXIS 197612, at *52-53. Not only does this sound a lot like the "parade of horribles" dismissed by *Bristol-Myers* (137 S. Ct. at 1783), none of the Congressional efforts identified address the specific jurisdiction analysis in *Bristol-Myers*.[8] And there is no constitutionally acceptable argument, such as efficiency concerns, that allows loosening specific jurisdictions' due process protections. This is particularly the case given the other venues in which claimants may pursue their claims. National class actions could proceed against defendants in States where they *are* subject to general jurisdiction, residents may file class actions in their own States, and "Congress may, consistent with the due process clause, enact legislation authorizing the federal courts to exercise nationwide personal jurisdiction." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987) (rejecting due process argument that a district court not "exercis[e] personal jurisdiction over class members who lack sufficient contacts" with the forum state because court was acting under a valid transfer order of the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407).

---

[8] The court also makes the following cryptic statement: "As discussed above, the Fifth Circuit has already affirmed personal jurisdiction over Taishan under settled Fourteenth Amendment due process framework – the same test used in [*Bristol-Myers*]. *Thus, this Court need not address the potential, if any, Fifth Amendment constraints on Congress's power to provide for nationwide personal jurisdiction.*" *In re Chinese-Manufactured Drywall*, 2017 U.S. Dist. LEXIS 197612, at *51-52 (emphasis added).

Third, reliance on Rule 23 elements as "due process safeguards not applicable in the mass tort context" is inconsistent with *Bristol-Myers*. *Momenta Pharm. Inc*., 353 F.Supp.3d at 692 (citing *Molock*, 297 F.Supp.3d at 126). The California Supreme Court justified the exercise of specific jurisdiction because the claims of the non-residents were "similar in several ways to the claims of the California residents." *Bristol-Myers*, 137 S. Ct. at 1779. The resident and nonresident claims both involved the same "allegedly defective product and the assertedly misleading marketing and promotion of the product." *Id*. Obviously, Rule 23 requires more than similarity, but nothing in *Bristol-Myers* suggests its outcome would be different if the claims were in every respect identical. *Bristol-Myers* stated without reservation that for a "state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." 137 S. Ct. at 1780 (emphasis in the original) (internal quotations omitted). The claims of Mississippi and Ohio residents do not arise out of or relate to Ohio Security's connection with Tennessee, thus specific jurisdiction over those claims is inconsistent with *Bristol-Myers*.

### b. *Absent Class Members May Be Considered For Jurisdictional Purposes.*

Picking up on Justice Sotomayor's dissent, specifically the citation to *Devlin*, 536 U.S. at 9-10,[9] some courts hold that absent class members are not "parties" and thus their residency is not relevant to the specific jurisdiction analysis. *Mussat v. IQVIA*, 953 F.3d 441, 447 (7th Cir. 2020). In *Mussat,* the Seventh Circuit stated that absent class members are not considered as parties "for assessing whether the requirement of diverse citizenship under 28 U.S.C. § 1332 has been met" nor are they considered for proper venue. *Id*. *Mussat* saw "no reason why personal jurisdiction

---

[9] Stating the Court "does not confront the question whether [*Bristol-Myers*] . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id*. at 1789, n.4 (citing *Devlin*, 536 U.S. 1, 9-10 (2002) ("Nonnamed class members . . . may be parties for some purposes and not for others.").

should be treated any differently"; the "named representatives must . . . demonstrate either general or specific jurisdiction, but the unnamed class members" do not. *Id*.[10]

But *Mussat*'s reference to *Devlin*, specifically that "[n]onnamed class members . . . may be parties for some purposes and not for others" and that the term "'party' [is] a conclusion about the applicability of various procedural rules that may differ *based on context*" cuts both ways. *Mussat*, 953 F.3d at 447 (emphasis added). While absent members of an uncertified class are not "parties," it does not follow that a defendant's due process rights in the "context" of a class action are "differ[ent]" and may be temporarily ignored. Stated differently, reliance on *Devlin* avoids *Bristol-Myers* without explaining why there *should* be a "differ[ence]", particularly given the absolute due process requirement that for a "state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the *defendant's* contacts with the forum." *Bristol-Meyers*, 137 S. Ct. at 1780 (emphasis in the original) (internal quotations omitted). This seems particularly true given that *Bristol-Myers'* focus was claims, not merely parties. *Id*. at 1781 ("In order for a court to exercise specific jurisdiction over a claim . . . .") Moreover, the "nonparty" aspect of absent class members is eliminated if the class is certified. The nonresident class members then become parties and the facts are similar to *Bristol-Myers*, the only difference being the use of Rule 23 to get there.

*Bristol-Myers* declared a general principle, and there is tension in applying this principle in a manner that leads to different results depending on whether a case is a "mass action", collective

---

[10] *Mussat* also cited Rule 23(b)(3)'s factor regarding "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" and a corresponding Committee Note stating that a court should consider the desirability of the forum "in contrast to allowing the claims to be litigated separately in forums to which they would ordinarily be brought" (Fed. R. Civ. P. 23(b)(3), Committee Note to 1966 amendment) as evidence that it is "recognize[d] that a class action "may extend beyond the boundaries of the state. 953 F.3d at 448. This argument is not particularly convincing because "forum" could refer to multiple state courts or a federal court with general jurisdiction; not specific jurisdiction over a defendant for nonresident absent class members' claims.

action, or a class action. *Bristol-Myers* would preclude a Tennessee court – State or federal (*see Walden*, 134 S. Ct. 1115) – from exercising specific jurisdiction over a defendant for an individual or class action lawsuit filed by Mississippi and Ohio residents regarding alleged wrongs and injuries sustained in Mississippi and Ohio. Therefore, that some courts would allow a Tennessee resident to advance such claims on behalf of a class is incompatible with *Bristol-Myers*' statement that third parties' claims "standing alone is an insufficient basis for jurisdiction . . . even when the third parties can bring claims similar to those brought by the nonresidents." *Id*.

Finally, *Bristol-Myers* is the lens through which the specific jurisdiction question must be analyzed. Courts should not ignore *Bristol-Myers* because before it "there was a general consensus that due process principles did not prohibit a plaintiff from seeking to represent a nationwide class in federal court, even if the federal court did not have general jurisdiction over the defendant." *Mussat*, 953 F.3d 441, 445. The question is whether *Bristol-Myers* changed this consensus. Justice Sotomayor "fear[ed]" *Bristol-Myers* would result in a "similar contraction" in specific jurisdiction like the "substantial curbs . . . in general jurisdiction" due *Daimler AG,* 134 S. Ct. 746. 137 S. Ct. at 1784. Indeed, some authorities posit whether "the Court's comment concerning a safe forum for nationwide class actions [i]s signaling that its recent jurisdictional decisions, including *Bristol-Myers*, effectively point towards an intent to limit nationwide class actions to forums with general jurisdiction over defendants." *Roy*, 353 F.Supp.3d at 58 (citing 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 6.26 (5th ed. 2011-2018)).

## IV.    CONCLUSION

*Bristol-Myers* used categorical language that, as written, has equal application to any action, including this case. This motion should be granted, and Plaintiff's claims alleged on behalf of Mississippi and Ohio alleged class members dismissed.

Respectfully submitted,

s/  Rand L. McClellan
George ("Buck") T. Lewis (TN #7018)
Nicole Berkowitz (TN #35046)
BAKER DONELSON
First Tennessee Building
165 Madison Ave.
Memphis, Tennessee 38103
T: 901.577.2256
F: 901.577.0749
blewis@bakerdonelson.com
nberkowitz@bakerdonelson.com

Mark A. Johnson (admitted *pro hac vice*)
Rand L. McClellan (admitted *pro hac vice*)
Andrea C. Wiltrout (admitted *pro hac vice*)
Jessica L. Greenberg (admitted *pro hac vice*)
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone:        614-228-1541
Facsimile:        614-462-2616
Email:      mjohnson@bakerlaw.com
            rmcclellan@bakerlaw.com
            awiltrout@bakerlaw.com
            jgreenberg@bakerlaw.com

*Attorneys for Defendant*
*Ohio Security Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2020, counsel for Defendant Ohio Security Insurance Co. electronically filed copies of **Defendant's Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction Over Claims Alleged on Behalf of Nonresident Putative Class Members** with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all parties registered with the Court's electronic filing system.

| | |
|---|---|
| J. Brandon McWherter | George T. Lewis, III |
| Clinton H. Scott | Nicole D. Berkowitz |
| GILBERT MCWHERTER SCOTT & BOBBITT PLC | BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C. |
| 341 Cool Springs Boulevard, Suite 230 | 165 Madison Avenue, Suite 2000 |
| Franklin, TN 37067 | Memphis, TN 38103 |
| brandon@msb.law | blewis@bakerdonelson.com |
| clint@msb.law | nberkowitz@bakerdonelson.com |
| | |
| T. Joseph Snodgrass | Rand L. McClellan |
| LARSON KING, LLP | Mark A. Johnson |
| 30 East Seventh Street, Suite 2800 | Andrea C. Wiltrout |
| St. Paul, MN 55101 | Jessica L. Greenberg |
| jsnodgrass@larsonking.com | BAKER & HOSTETLER LLP |
| | 200 Civic Center Drive, Suite 1200 |
| Erik David Peterson | Columbus, OH 43215 |
| MEHR, FAIRBANKS & PETERSON TRIAL LAWYERS, PLLC | rmcclellan@bakerlaw.com |
| 201 West Short Street, Suite 800 | mjohnson@bakerlaw.com |
| Lexington, KY 40507 | awiltrout@bakerlaw.com |
| edp@austinmehr.com | jgreenberg@bakerlaw.com |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant* |

s/ Rand L. McClellan
Rand L. McClellan